UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| QUILLIE L. HARVEY, JR., | ) | Case No. 09cv0150-LAB (BLM) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION FOR** |
| v. | ) | **ORDER GRANTING RESPONDENT'S** |
| | ) | **MOTION TO DISMISS and DENYING** |
| A. HEDGPETH, Warden, et al., | ) | **PETITIONER'S MOTION FOR** |
| | ) | **EQUITABLE TOLLING** |
| Respondents. | ) | |
| | ) | |
| ———————————————— | ) | |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On January 23, 2009, Petitioner Quillie L. Harvey, Jr., a state prisoner appearing *pro se* and *in forma pauperis*, filed the Petition for Writ of Habeas Corpus currently before the Court. Doc. No. 1. Petitioner challenges his 1992 guilty plea to one count of second degree murder with a firearm. Id.

This Court has considered the Petition, Petitioner's Motion/Declaration for Equitable Tolling, Respondent's Motion to Dismiss, Petitioner's Opposition to Respondent's Motion to Dismiss and

1  all supporting documents submitted by the parties.  For the reasons set

2  forth below, this Court **RECOMMENDS** that Respondents' Motion to Dismiss

3  [Doc. No. 9] be **GRANTED** and Petitioner's Motion/Declaration for

4  Equitable Tolling [Doc. No. 3] be **DENIED**.

5  <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

6       On August 27, 1991, Petitioner, who was seventeen years old at the

7  time, pled guilty in San Diego Superior Court to one count of second

8  degree murder with the personal use of a firearm.  <u>See</u> Lodgment 1 at 2;

9  Pet., Exs. A & C.  Thereafter, Petitioner moved to withdraw his guilty

10 plea.  <u>See</u> Lodgment 1 at 3; Pet., Ex. B.  On March 4, 1992, the trial

11 court denied Petitioner's motion and sentenced him to 15 years to life

12 for the second degree murder plus a consecutive four-year term for the

13 firearm enhancement.  <u>See</u> <u>id.</u>

14      Petitioner appealed and in an unpublished decision filed on January

15 21, 1994, the California Court of Appeal affirmed the judgment.  <u>See</u>

16 Lodgment 1 at 3; Pet., Ex. E.  Thereafter Petitioner sought review in

17 the California Supreme Court.  Lodgment 1.  On March 30, 1994, the

18 California Supreme Court denied the petition.  Lodgment 2.

19      On February 8, 2008, Petitioner filed a petition for writ of habeas

20 corpus in the San Diego County Superior Court claiming: (1) the Board of

21 Parole Hearings erred in finding him unsuitable for parole, (2) the

22 parole board violated the terms of Petitioner's plea agreement and the

23 trial court should have allowed Petitioner to withdraw his plea,

24 (3) Petitioner's trial counsel was ineffective because he misadvised

25 Petitioner as to the benefits of his plea, and (4) his appellate counsel

26 was ineffective for failing to raise ineffective assistance of trial

27 counsel as a grounds for appellate relief.  Lodgment 3.  On March 27,

28 2008, the superior court denied claim (1) on the merits, concluded that

1  claims (2) and (3) already had been "thoroughly reviewed and resolved"

2  on direct appeal, and rejected claim (4), finding that Petitioner had

3  failed to provide any evidence that his appellate counsel was

4  ineffective.  Lodgment 4.

5      Petitioner filed a habeas petition in the California Court of

6  Appeal on May 9, 2008.[1]  Lodgment 5.  On July 3, 2008, the Court of

7  Appeal denied the petition, noting that Petitioner already had argued on

8  direct appeal that the trial court abused its discretion in denying his

9  motion to withdraw his guilty plea.  Lodgment 6.  Concluding that

10 Petitioner's second and third claims presented "the same issue cloaked

11 in terms of ineffective assistance of counsel," the appellate court

12 denied all three claims on the grounds that they were "procedurally

13 barred as repetitive."  Id. (citing In re Clark, 5 Cal. 4th 750, 765,

14 767-68 (1993)).  To the extent Petitioner alleged that the ineffective

15 assistance claims were separate and distinct issues, the court found

16 them untimely.  Id.  The Court of Appeal denied Petitioner's challenge

17 to the parole denial due to Petitioner's failure to provide a record.

18 Id.

19     In a habeas petition dated July 16, 2008, Petitioner presented his

20 two ineffective assistance of counsel claims to the California Supreme

21 Court.  Lodgment 7.  On December 17, 2008, the California Supreme Court

22 denied the petition, citing In re Robbins, 18 Cal. 4th 770, 780 (1998).

23 Lodgment 8.

24     Petitioner filed the instant federal habeas petition on January 23,

25

26 _____

27     [1]  In this petition, Petitioner only raised claims for ineffective assistance
    of trial and appellate counsel.  See Lodgment 5.  However, the Court of Appeal
28  addressed all four of the claims raised in Petitioner's habeas petition to the superior
    court.  See Lodgment 6.

1  2009, alleging (1) ineffective assistance of trial counsel and

2  (2) ineffective assistance of appellate counsel. Doc. No. 1. In

3  support of his ineffective assistance of trial counsel claim, Petitioner

4  explains that he was seventeen years old at the time the charges were

5  brought and relied on his attorney for guidance. Pet. at 6 & Ex. F. He

6  claims that his attorney told him that the prosecutor was offering a

7  plea bargain whereby Petitioner would plead guilty to second degree

8  murder and be sent to the California Youth Authority ("CYA") until he

9  reached age twenty-five, at which time he would be released from

10 custody. Id. He claims that counsel told him this was a good deal

11 because, otherwise, Petitioner most likely would be convicted of first

12 degree murder and kidnaping and given a sentence of twenty-five years to

13 life in prison. Id. According to Petitioner, his trial attorney

14 relayed the same information to Petitioner's father. Id. at 6 & Ex. E

15 (January 21, 1994 Court of Appeal opinion denying Petitioner's direct

16 appeal, which states that Petitioner's father testified to this effect

17 at the hearing on Petitioner's motion to withdraw his guilty plea).

18 After discussing it with his father, Petitioner decided to plead guilty

19 because he would only be held at the CYA until age twenty-five, he and

20 has father thought it was important that he take responsibility for his

21 actions, and he would receive an education and learn a trade while in

22 custody. Id. at 3, 9. Petitioner's father was not present at the

23 change of plea hearing, at which Petitioner claims trial counsel

24 directed him whether to answer "yes" or "no" to each question posed by

25 the judge. Id. at 7.

26    Petitioner's second claim, for ineffective assistance of appellate

27 counsel, is based on appellate counsel's failure to raise ineffective

28 assistance of trial counsel as an issue on direct appeal. Id. at 8.

Petitioner explains that he filed a notice of appeal on May 12, 1992[2], and then sought representation from Appellate Defenders, Inc.  Id.  As his attached application for representation by Appellate Defenders demonstrates, Petitioner sought to appeal based on the fact that his trial counsel misadvised him regarding the plea deal being offered and, therefore, "did not represent [Petitioner] to his fully capability."  Id., Ex. F.

Appellate Defenders apparently assigned Petitioner's case to a private attorney.  Id. at 8; see also Lodgment 9 (Petitioner's opening brief on direct appeal, which was filed by a private attorney under appointment "under Appellate Defenders' Assisted Care System").  Petitioner claims he was unaware of this appointment and, thus, continued writing to Appellate Defenders regarding his appeal.  Pet. at 8 & Ex. I (May 16, 2008 letter from Appellate Defenders, in response to Petitioner's request for his file, providing Petitioner with the name and address of the private appointed attorney).  While Petitioner acknowledges having received letters informing him that his appeal was denied at each stage of his direct appeal[3], he claims neither the private attorney nor Appellate Defenders ever sent Petitioner copies of his opening brief or petition for review so he was unaware that the ineffective assistance of counsel claim had never been raised.  Pet. at

---

[2]  The record does not contain a copy of this notice of appeal, so it is unclear whether it was filed by counsel on Petitioner's behalf, or directly by Petitioner.  The phrasing of the Petition suggests that Petitioner prepared and filed the notice himself.  See Pet. at 8.

[3]  These letters are not attached to the Petition.

09cv0150-LAB (BLM)

8; Pet'r Opp'n at 3[4].

It was only in advance of his July 30, 2007 parole hearing, at which time Petitioner was given access to his prison files, that Petitioner saw a copy of the Court of Appeal's opinion on direct review and claims he learned for the first time that his appellate counsel had never raised ineffective assistance of trial counsel on direct appeal. Pet. at 8.   Thereafter, Petitioner requested a copy of his file from Appellate Defenders.  Id.  In response, Appellate Defenders provided him with some records, but informed him that they did not have his transcripts because the transcripts would be in the private attorney's possession, unless he had mailed them to Petitioner.  Id., Ex. I. Petitioner then wrote to the private attorney, who provided him with the California Supreme Court's denial, but claimed he had returned the transcripts to Appellate Defenders.   Id.

Acknowledging that the timeliness of his federal petition might be an issue, Petitioner requests equitable tolling, arguing that he acted with due diligence upon learning of his appellate counsel's failure to raise the ineffective assistance claim.   Pet. at 10 and Mot. for Equitable Tolling at 1-2.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the

---

[4]    Petitioner attaches to his Opposition a 1993 letter from Appellate Defenders to the private attorney, which he says shows that the private attorney was sending everything to Appellate Defenders, not Petitioner.  Pet'r Opp'n, Ex. A (letter from Appellate Defenders returning a draft opening brief to the private attorney after review).

1   judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties
2   of the United States.

3   28 U.S.C. § 2254(a) (West 2006).

4   <u>**DISCUSSION**</u>

5   Respondent contends that the Petition should be dismissed because

6   Petitioner filed it more than eleven years and eight months after the

7   statutory limitations period expired.  Resp't Mem. at 2.

8   **A.**   <u>**Respondent Brown Should Be Dismissed As An Improper Party**</u>

9   As an initial matter, the petition names A. Hedgpeth and Edmund G.

10   Brown, Jr. as Respondents.  Rule 2 of the Rules Governing § 2254 Cases

11   provides that the state officer having custody of a habeas petitioner

12   shall be named as respondent.  Rule 2(a), 28 U.S.C. foll. § 2254.  The

13   structure of the California penal system places prisoners in the custody

14   of both the Director of Corrections and the warden of the California

15   prison where the petitioner is incarcerated.  <u>See</u> <u>Ortiz-Sandoval v.</u>

16   <u>Gomez</u>, 81 F.3d 891, 895-96 (9th Cir. 1996) (noting that "the warden of

17   a California prison and the Director of Corrections for California have

18   the power to produce the prisoner," and emphasizing that the Advisory

19   Committee Notes accompanying the Rules Governing § 2254 Cases

20   contemplate directors as possible respondents).  Thus Hedgpeth,

21   identified as the warden of where Petitioner is currently incarcerated,

22   is a proper respondent, whereas Brown, the Attorney General of the State

23   of California, is not.[5]

24

25   [5]   However, "if the applicant is not presently in custody pursuant to a state judgment against which he seeks relief but may be subject to custody in the future,"

26   then "the officer having present custody of the applicant as well as the attorney general of the state in which the judgment which he seeks to attack was entered shall

27   each be named as respondents."  Rule 2(b), 28 U.S.C. foll. § 2254.  Here, there is no

28   basis for Petitioner to have named the Attorney General as a respondent in this action.

1    The Attorney General failed to move to dismiss Respondent Brown as

2    an improper party.   Instead, the Attorney General opted to move to

3    dismiss on behalf of Respondent Hedgpeth only.   Because the Court finds

4    that Brown was improperly named as a respondent, this Court **RECOMMENDS**

5    that Respondent Brown be **DISMISSED** as an improper party.

6    **B.   The AEDPA's Statute of Limitations**

7    The Antiterrorism and Effective Death Penalty Act of 1996

8    ("AEDPA"), effective April 24, 1996, imposes a one-year statute of

9    limitations on federal petitions for writ of habeas corpus filed by

10   state prisoners.   28 U.S.C. § 2244(d) (West Supp. 2006).   The one-year

11   limitations period runs from the latest of:

12       (A)   the date on which the judgment became final by the
         conclusion of direct review or the expiration of the time for
13       seeking such review;

14       (B)   the date on which the impediment to filing an application
         created by State action in violation of the Constitution or
15       laws of the United States is removed, if the applicant was
         prevented from filing by such State action;

16
         (C)   the date on which the constitutional right asserted was
17       initially recognized by the Supreme Court, if the right has
         been newly recognized by the Supreme Court and made
18       retroactively applicable to cases on collateral review; or

19       (D)   the date on which the factual predicate of the claim or
         claims presented could have been discovered through the
20       exercise of due diligence.

21   Id. § 2244(d)(1)(A)-(D).

22   Petitioner's 1992 murder conviction became final *before* the April

23   24, 1996 enactment of the AEDPA.   The AEDPA's statute of limitations,

24   therefore, began to run on April 25, 1996, the day after the AEDPA's

25   enactment, and expired one year later on April 24, 1997.   Malcom v.

26   Payne, 281 F.3d 951, 955 (9th Cir. 2002) (citing Patterson v. Stewart,

27   251 F.3d 1243 (9th Cir. 2001)).   Even taking into account that

28   Petitioner constructively filed his federal petition on January 14,

1  2009[6], the Petition still was filed over eleven years and eight months

2  late.

3      Petitioner argues that the statutory clock should not begin to run

4  until July 2007, the date on which he became aware of the factual

5  predicate of his ineffective assistance of counsel claim.  28 U.S.C.

6  § 2244(d)(1)(D).  In support of his argument, Petitioner asserts that he

7  did not discover that his appellate attorney had not alleged an

8  ineffective assistance of counsel claim on direct appeal until he read

9  the appellate brief while reviewing the California Department of

10 Corrections and Rehabilitation files in preparation for his July 30,

11 2007 parole board hearing.  Pet. at 8.  Contrary to Petitioner's

12 argument, section 2244(d)(1)(D) does not delay the commencement of the

13 limitations period until the petitioner *actually* discovers the factual

14 predicate; it merely delays it until the petitioner could have

15 discovered the factual predicate "through the exercise of due

16 diligence."  28 U.S.C. § 2244(d)(1)(D).  Here, while Petitioner may have

17 "actually" discovered the alleged error in July of 2007, with due

18 diligence, he could have discovered the error years earlier.  As

19 discussed more thoroughly in section B(2) below, Petitioner has not

20 demonstrated that he made any effort to participate in his direct appeal

21 or monitor the progress of his case.  Had Petitioner requested copies of

22 his opening brief, the petition for review, or the court orders at each

23

24      [6]    In determining the filing date of his petition, Petitioner is entitled to
   the benefit of the "mailbox rule," which is the date the petition was presented to
25 prison authorities for mailing to the court.  See Houston v. Lack, 487 U.S. 266, 276
   (1988) (holding that petitioner's notice of appeal is deemed "filed at the time [he]
26 deliver[s] it to the prison authorities for forwarding to the court clerk"); Huizar v.
   Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) (recognizing the application of Houston's
27 mailbox rule to federal habeas filings).  Here, the proof of service accompanying
   Petitioner's federal habeas petition bears a signature and handwritten date of January
28 14, 2009.  Doc. No. 1.

1  stage *during* the pendency of his direct appeal, Petitioner would have

2  learned at that time that his attorney had not raised his desired claim.

3  He then could have filed a timely federal habeas petition.  As such, he

4  does not satisfy section 2244(d)(1)(D)'s requirements and he is not

5  entitled to a delayed commencement of the limitations period.[7]

6  Consequently, absent tolling, the instant petition is untimely and

7  barred by the statute of limitations.

8  **C.**  **Tolling**

9       **1.**  **Petitioner Is Not Entitled to Statutory Tolling**

10      The AEDPA tolls its one-year limitations period for the "time

11  during which a properly filed application for State post-conviction or

12  other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2); Nino

13  v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). The statute of

14  limitations is not tolled, however, "from the time a final decision is

15  issued on direct state appeal [to] the time the first state collateral

16  challenge is filed."  Nino, 183 F.3d at 1006.  Similarly, the

17  limitations period is not tolled after state post-conviction proceedings

18  are final and before federal habeas proceedings are initiated.  See 28

19  U.S.C. § 2244(d)(2).

20      Petitioner is not entitled to statutory tolling.  The California

21  Supreme Court denied his petition for review on March 30, 1994 (Lodgment

22  2), and Petitioner did not constructively file his first state habeas

23  petition until over thirteen years later on February 3, 2008 (Lodgment

24

25 _____

26      [7]   Moreover, even if Petitioner were entitled to the delayed limitations
period, Petitioner admits that he learned of the factual predicate in July 2007 so the
27  limitations period would have expired one year later on or before July 30, 2008.  28
U.S.C. § 2244(d)(1)(D).  Petitioner did not file his federal petition until January 14,
28  2009 - more than five months later - so it still was untimely.

3 at 159).[8]   As Respondent correctly notes (Resp't Mem. at 4), a collateral action cannot revive an expired limitations period.  <u>Jiminez v. Rice</u>, 276 F.3d 478, 482 (9th Cir. 2001); <u>Green v. White</u>, 223 F.3d 1001, 1003 (9th Cir. 2000).   Thus, unless Petitioner establishes an entitlement to equitable tolling, the instant Petition is untimely.

   **2.**   **<u>Petitioner Fails to Show That Equitable Tolling Is Warranted</u>**

   Petitioner argues he is entitled to equitable tolling because his appellate counsel did not base the appeal on the ineffective assistance of trial counsel grounds Petitioner requested and did not provide Petitioner with copies of any court orders or transcripts, which would have allowed Petitioner to discover this omission earlier.  Pet'r Opp'n at 2-4; Mot. for Equitable Tolling at 1-2.   Respondent counters Petitioner's assertion regarding lack of knowledge, noting that the proofs of service attached to both the opening brief on direct appeal and the petition for review indicate that appellate counsel mailed copies of these documents to Petitioner.  Resp't Mem. at 3 (citing Lodgments 1 & 9 and highlighting that the petition for review includes as an attachment the Court of Appeal's January 21, 1994 opinion). Petitioner denies having received either document.  Pet'r Opp'n at 3.

   In the Ninth Circuit, the AEDPA's one-year statute of limitations is subject to equitable tolling.[9]  <u>See</u> <u>Harris v. Carter</u>, 515 F.3d 1051, 1055 n.4 (9th Cir. 2008) (confirming the Ninth Circuit holding that § 2244(d) allows for equitable tolling); <u>Roy v. Lampert</u>, 465 F.3d 964,

---

   [8]   This also was years after the AEDPA's statute of limitations expired on April 24, 1997.

   [9]   The Supreme Court has never squarely addressed the question of whether § 2244(d) allows for equitable tolling of the AEDPA's statute of limitations.  <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007) (assuming without deciding that equitable tolling applies to the AEDPA's limitations period).

970 (9th Cir. 2006) (same).  While equitable tolling is "unavailable in most cases," <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).  Petitioners face such a high bar so as to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." <u>Guillory v. Rose</u>, 329 F.3d 1015, 1018 (9th Cir. 2003) (citing <u>Carey v. Saffold</u>, 536 U.S. 214, 226 (2002)).

Even if the Court accepts all of Petitioner's allegations as true, they do not excuse Petitioner's failure to follow up with appellate counsel in any respect after the denials on direct appeal or to make some effort to participate in the appeal process.  As the Third Circuit concisely stated, "a habeas petitioner is not excused from exercising due diligence merely because he has representation during various stages of, or even throughout, his state and federal proceedings." <u>LaCava v. Kyler</u>, 398 F.3d 271, 277-78 (3rd Cir. 2005) (finding petitioner failed to act diligently in waiting twenty-one months to ask counsel or the court about status of petition and, thus, that petitioner was not entitled to equitable tolling); <u>see also</u> <u>Hunter v. Galaza</u>, 2007 WL 2812176, *6-*7 (E.D. Cal. Sept. 26, 2007) (adopting in full magistrate judge's recommendation that equitable tolling be denied based on conclusion that, even if counsel is negligent, petitioner is not relieved "of his own responsibility to be aware of and to know what was happening in his direct appeal or to take reasonable steps to file his federal habeas petition within one year of the conclusion of the direct

appeal"); <u>Thompson v. Tilton</u>, 2009 WL 596605, *10 (C.D. Cal. Mar. 6, 2009) (finding equitable tolling unwarranted for lack of diligence where petitioner did not make any effort to follow up with attorney prior to expiration of statute of limitations regarding potential filing of habeas petition).  Counsel may have been at fault for failing to notify Petitioner that private counsel, as opposed to Appellate Defenders, was representing him on appeal.  But Petitioner himself acknowledges that one or the other contacted him via letter after his appeal was denied at each level.  Pet. at 8.  Petitioner could have responded by requesting a copy of his opening brief, petition for review and/or the Court of Appeal and California Supreme Court's decisions.  He did not attach to his Petition any correspondence suggesting that he made such requests during the pendency of his direct appeal and Appellate Defenders' response to his 2008 letter (<u>see</u> Pet., Ex. I) suggests that they would have promptly provided records and his private appellate attorney's name and contact information upon request.

A petitioner who abdicates all responsibility for prosecuting his case to his attorney runs the risk that the attorney will make different decisions than the petitioner may himself have made.  In this case, had Petitioner made any effort to communicate with his attorney during the direct appeal, he would have learned at that time of counsel's failure to raise his desired ineffective assistance of counsel claim and could have filed a timely federal habeas petition.  His lack of diligence does not warrant equitable tolling over a decade later.  <u>See</u>, <u>e.g.</u>, <u>LaCava</u>, 398 F.3d at 277; <u>Hunter</u>, 2007 WL 2812176 at *6-*7; <u>Thompson</u>, 2009 WL 596605 at *10.

Petitioner argues that this case is analogous to <u>Spitsyn v. Moore</u>, 345 F.3d 796 (9th Cir. 2003), wherein the Ninth Circuit confirmed that

1  "where an attorney's misconduct is sufficiently egregious, it may

2  constitute an 'extraordinary circumstance' warranting equitable tolling

3  of AEDPA's statute of limitations." Spitsyn, 345 F.3d at 800 (citing

4  Ford v. Hubbard, 330 F.3d 1086, 1106 (9th Cir. 2003) ("there are

5  instances in which an attorney's failure to take necessary steps to

6  protect his client's interests is so egregious and atypical that the

7  court may deem equitable tolling appropriate")).   In Spitsyn, the

8  prisoner's mother hired an attorney, nearly a year before the statutory

9  deadline, to file a federal habeas petition on behalf of her son. Id.

10  at 798.   The attorney failed to do so within the one-year limitations

11  period and also failed to return the client's file until two months

12  after the statutory deadline expired (despite the client's pre-deadline

13  letter terminating his representation and requesting that he return the

14  file). Id.   Given these circumstances, the court concluded that "the

15  misconduct of Spitsyn's attorney was sufficiently egregious to justify

16  equitable tolling of the one-year limitations period under AEDPA." Id.

17  at 801.

18      The Court finds Spitsyn distinguishable from the circumstances

19  presented in the instant Petition.   As an initial matter, Petitioner's

20  counsel did not fail to timely file any petitions, he simply did not

21  present the claim Petitioner apparently wished to argue in the manner

22  Petitioner preferred.   Petitioner argues that he wanted to allege

23  ineffective assistance (Pet. at 8), but appellate counsel merely argued

24  judicial error for failing to state the statutory minimum penalty, which

25  implicitly incorporated Petitioner's argument (Lodgment 1 at 6).   If

26  anything, appellate counsel's failure to include the ineffective

27  assistance claim that Petitioner raised on his request for appellate

28  counsel form was mere negligence and even the Spitsyn court acknowledged

that the Ninth Circuit "[has] not applied equitable tolling in non-capital cases where attorney negligence has caused the filing of a petition to be untimely." Spitsyn, 345 F.3d at 800.[10]  Second, whereas both Spitsyn and his mother repeatedly wrote to the attorney asking about the status of the case and even contacted the Washington State Bar Association and filed grievances against the attorney when he failed to respond, id., Petitioner does not present any evidence suggesting that he ever contacted Appellate Defenders or the private attorney during the pendency of his direct appeal requesting further information or documentation regarding the claims raised and the courts' dispositions of those claims.  See Hunter, 2007 WL 2812176 at *6 (finding case distinguishable from Spitsyn where petitioner did not make any effort for over a year to contact his attorney or the California Supreme Court to verify the status of his petition).  Moreover, Petitioner did not timely file a state habeas petition raising the ineffective assistance claims allegedly overlooked by his appellate counsel.  In sum, the Court finds equitable tolling unwarranted because Petitioner's counsel's alleged conduct was not sufficiently "egregious" to justify equitable tolling and Petitioner did not act with reasonable diligence.

For the foregoing reasons, the Court finds that the instant Petition was filed well after the statute of limitations expired and Petitioner has not satisfied his burden of demonstrating that equitable tolling is appropriate in this case.  See Gaston v. Palmer, 417 F.3d

---

[10]   Numerous courts have confirmed that ordinary negligence on the part of counsel is not an extraordinary circumstance warranting equitable tolling.  See Lawrence, 549 U.S. at 336 ("Attorney miscalculation [of the AEDPA's limitations period] is simply not sufficient to warrant equitable tolling"); Stillman v. LaMarque, 319 F.3d 1199, 1203 & n. 6 (9th Cir. 2003) (noting that routine instances of attorney negligence are not grounds for equitable tolling); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that attorney miscalculation and "negligence in general" are not sufficient to warrant equitable tolling).

1030, 1034 (9th Cir. 2005) (holding that the petitioner "bears the burden of showing that equitable tolling is appropriate"). As a result, this Court finds that the claims presented in the Petition are barred by the AEDPA's one-year statute of limitations and, therefore, **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** and Petitioner's Motion for Equitable Tolling be **DENIED**.

<u>**CONCLUSION AND RECOMMENDATION**</u>

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondents' Motion to Dismiss; (3) denying Petitioner's Motion for Equitable Tolling, and (4) dismissing this action in its entirety with prejudice.

**IT IS ORDERED** that no later than <u>**May 20, 2009**</u>, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>**June 10, 2009**</u>.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

DATED:  April 29, 2009

_Barbara L. Major_
BARBARA L. MAJOR
United States Magistrate Judge

16                                                         09cv0150-LAB (BLM)